All right, our third case is Elizabeth Benton versus Zurich American Insurance Company. And that is case number 19-13252. So Mr. Jackson is here for the appellants and Mr. Sprinkle for the appellees. Mr. Jackson, whenever you're ready. Yes, sir. May it please the court. When an insurer looks at risk, and it has two obligations or three rather in this particular case. First is, what is the risk that an insurer is insuring? What's the insured doing? Number two, if it's a vehicle, what kind of vehicle is the insured operating its business with? And three, how do you template that against the statutes, the regulations for motor carriers, which are highly regulated under both Georgia and federal law? As it relates to that, in the court is aware and looked at the briefs, this tragic situation, a dump truck came off of a Napa auto parts store out in Gwinnett County, bad brakes, close to a gallon of water in its brake lines, hit and killed Chase Benton. He was on his way to a part-time job in very tragic circumstances. The issue as it relates to the legal issue in this case is, is there any evidence on a summary judgment standard, whether or not this particular insured was engaged or conducting motor carrier operations for hire? We believe the answer to that is replete throughout the record. And the answer is, yes, they were. In this particular case, Kirby... With regard to that point, do we look at the state of the record as it existed when Kirby filed for coverage? We look at what Zurich knew at the time or does the lens go beyond that? Well, the lens, I think that's an accurate cabin to some degree, your honor. You have to look at it again from an insurer's perspective. Insured since an insured submits an application in this case, the application was clear using Zurich's own software. And that's pointed out in the record that these were all commercial vehicles. Under Georgia law and regulations, there's three types of vehicles. A commercial motor vehicle exceeding 10,001 pounds, a second type exceeding 26,001, which is what you would typically see for motor carrier for hire policies. And then there's in the Georgia rules and regulations also what's called a lightweight commercial vehicle, which is typically pickup trucks, those things that are operated by commercial motor vehicle operation. We have two of those here. We have clearly on the policy and Judge May in her order said it's not relevant because Georgia law has not adopted the federal motor carrier regulations as it relates to weights of vehicle. That's just flat wrong. And I can tell you why your honor. I'm sorry, I'm sort of confused because I thought that the issue here was whether or not they were a motor carrier of property. And my understanding from the record is that when they apply for the application, they were told by the agent specifically said that they were not carrying property. They were just carrying, I think, was it just grading or I can't remember exactly what the word was, but Zurich, my understanding from the record is that Zurich did not know or was not informed that they were a motor carrier of property. Okay, your honor and that's an important point. That is not the insurer's sole obligation. If you were the insurer and I came to you and I listed on my policy commercial motor vehicles, you understand through your investigation that I'm engaged in grading and hauling operations. And there's a specific exhibit in this case where Zurich had underwriting guidelines where it understood that if you insure a land grading operation, even though it may not have for hire authority from either the Georgia PSC at the time of this incident, or number two, the federal motor carrier, you still have to look at it. And if they're using in their land grading operations, either directly or they're subbing out work to get folks to haul what they call grubbing work yarn, stumps, broken up concrete, take them just basically on a circuit from the site, you're engaged in motor carrier operations. And in that exhibit, and I'm trying to share the screen, but I can't get it to operate. I was gonna show you from Zurich's own underwriting guidelines where it says, even though the insured is not engaged, doesn't have an MC authority, which is interstate or under Georgia's rule, the what's called the unified carrier regulations statute, where you have to register as an interstate carrier, your honor, you still have to look at that. And if they're doing that, their own underwriting guidelines says you have to make, and in their underwriting guidelines, they called it public utility filings. In this case, it's the Georgia Public Service Commission. You still have to file the form E, which is the certificate of insurance in the case. And then when you go to cancel it, which is the issue in this case, you have to issue the form K. Otherwise that policy coverage is continuous. But wait, here's the question I have for you. And just explain to me if I'm wrong about this, but this is my understanding of the record, is that we had a grading company that grades land and makes it flat, takes what a grading company does, that then it hires a motor carrier to move dirt, move stumps, whatever. We all know that the motor carrier, the people that own the dump trucks, they should have had this kind of insurance, but they didn't. And you're trying to say that the grading company itself is a motor carrier because it's subject to work and hiring. Is that the basis of what's going on here? No, sir, I don't think that's an accurate. What happened here is this. Genuine parts engaged Boatwright Construction to build basically a Napa auto parts store out in Gwinnett County. Boatwright then subbed out the work of getting the site cleared and the debris and dirt off the site, which entails motor carrier for higher operations on Georgia's roads to get it off the site. That was the agreement. Right, but wasn't the Landrus, the dump trucks that came who were doing the hauling were not actually employees of Kirby? Weren't they hired? They were subbed out, weren't they? Kirby hired Landrus, his son, and another carrier, Greeson Hauling, to assist it in removing the dirt. What happens, Your Honor, typically on these sites, and you may have seen it, ma'am, is these dump trucks line up and they may have various motor carriers. You may have seven different motor carriers in line. Kirby hired them that day because of the volume of dirt, debris, stumps to get off. I understand that, but my question goes back to Judge Brasher's question, which is I have a company, but my company is to do the grading work. I'm also now being contracted to do hauling from the grading work. I then hire and I subcontract with this other company, Landrus and Greeson, and that's what they do. They actually are motor carriers of property. Why then should I have to, why should Zert have to insure me for purposes of motor carrier property when that's not what my business is? Because that, the public, because Georgia statutes and its regulations and case law define what Kirby is doing as a motor carrier for hire. If you're removing dirt, stumps, and you've agreed to take on that obligation, Landrus didn't agree to it, Greeson didn't, or nine other sub-haulers didn't agree to it, Kirby did. It is its contractual obligation to get those products off the site to a dump site, dump, get a dump ticket and turn around and do it again. But the statute says it's motor carrier, I apologize, I'm not looking, it's hard with Zoom to be able to read everything here, is a person owning, controlling, operating, or managing any motor propelled vehicle? Well, is there any evidence in the record that they, that Kirby owned this vehicle? They don't have to, Your Honor, because you missed a section. Subsection OCGA 46-1-1, open parens six, and then also the case, Sap V. Canal, and the Pinson case is, it's routine, what's called statutory employment under 49 CFR 390.5, and then the leasing regulations under 49 CFR 376, and then also under Georgia statutes at OCGA 51-12-5, open parens five, Your Honor, where it talks about time, manner, and method. It does not, the road does not end, no pun intended, if you're a motor carrier, but you're routinely engaging. That goes on every day. Walmart may have 5,000 trailers out today and only have 4,900 power units. It has no written agreement, but it engages a third party carrier to assist it in its motor carrier operations. It agrees to pay off of a load board or website, a particular amount, Your Honor. They become Walmart's agent for that particular load. Its policy will follow the trailer. If it's hiring them just on a handshake deal or off a load board, it's a classic 390.5. They become a leased or statutory employer. Georgia has adopted the motor carrier regulations, including 390.5. If you look at the exhibits, Volume 9, Exhibit 1A, which is the Georgia PSC regulations, and you go in there and you thumb through those at Chapter 3, Chapter 4, and Chapter 7 of those, four explicitly, Chapter 4 of those PSC regs explicitly adopts 390.5, the leasing regulations, and it's very precise and pedantic definitions of statutory employers and for hire operations. There's an older Georgia case that is from the 1960s that we had a revenue commissioner named Hiram Undercoffler. And at that time, motor carrier operations were taxed, or were excise tax. And there was a particular carrier that was saying that it's hauling dirt, debris, stone, asphalt, concrete, those type of things off of the site, didn't make it a motor carrier for hire. It was a private motor carrier. But in that case, and that's Undercoffler v. Robinson, and that's 111 Georgia Appeal 411, and that's a 1965 case, the Georgia appellate court said, you are engaged. The fact that you're just hauling dirt and debris off the site doesn't change that you're a for hire operator. In this case, it doesn't change that Kirby's a for hire operator. The fact that it chose not to purchase vehicles and instead agreed to lease them or sub them out when they had large hauling days does not change the fact that it is a for hire carrier, and that it is leasing and making these folks, they're statutory employers, telling them where to go, where to dump, they're loading them, and they get paid by the loads. In fact, in the record- May I ask you a question? Mr. Jackson, can you hear me? Yes, I can hear, sir. I can hear you, ma'am. Oh, I'm sorry. Did you wanna ask a question, Judge Jordan? Mr. Jackson, can you hear us? Yes, sir, I can hear you, sir. Yeah, we froze for a moment, I think. We've taken you way beyond your time, and those were our questions. So if you wanna wrap up, you've got 30 seconds to do so, and you'll have saved up your time for rebuttal. Yes, sir. And your honor, ma'am, you were asking, if you look at in volume 12s at exhibit eight and nine, is the affidavit of Jerry Kirby, what he was doing, and number nine are the actual billing. Kirby was billing as a motor carrier. It was billing the general contractor as if it were a motor carrier for the dumps, the dump tickets, and the load circuits. That's all I have, your honor. I'll reserve my time for rebuttal. Thank you. All right, thank you very much, Mr. Jackson. Yes, sir. Okay, Mr. Sprinkle, whenever you're ready. Good morning. May it please the court. I'm Brian Sprinkle. I represent Zurich American Insurance. In this case, as the court is aware, this case has a long and complicated history. Indeed, this is the second case in which the Bentons have tried to create insurance coverage where none exists. There's already previously a declaratory judgment action, which they argued that insurance policy issued by owner's insurance company applied to Kirby grading. Only after losing that declaratory judgment action did the Bentons then turn their attention to Zurich. There also is a separate malpractice action that Kirby grading was filed against its insurance agent as a result of the gap in coverage that exists between the Zurich policy and the owner's insurance policy. The key facts in this case you've already touched on, but once again, they are that when Kirby grading applied for this policy, it did not tell Zurich that it was a motor carrier. It did not say that it had to file any motor carrier filings. And indeed, a automatic hold would have fired if that had been the case because the Zurich small business unit that issued the policy was not in the business of writing for higher motor carriers. The key thing in the case below, and you all have touched on this somewhat, is that there is no evidence that Kirby was a motor carrier. In fact, the evidence in the trial below was that Kirby hired a entity, Greeson. That entity, a subcontractor, was then responsible for removing any dirt from the project. Kirby itself was just a grading company. The evidence of the trial below further confirms that Greeson then hired Stephen Landers and his company, Landers Trucking, and that the only connection between Landers was with Greeson. There was no connection whatsoever between Kirby grading and Landers. And indeed, there was a special verdict form at the trial in the case below in which the jury there found that Greeson had no control over the time, manner, or method of Landers' actions, and there was no lease agreement. And that's important because Greeson was the entity in between Kirby grading and Landers on the project, confirming that Kirby simply had no liability in this case, but for the fact that it had chosen to remain in default, via some type of arrangement, it had reached with the Bentons prior to the trial. And may I ask you a question? Can you talk about the equitable reformation section of the trial court's order? Yes, the district court correctly held that there was no equitable basis to reform the policy into a motor carrier policy, because under Georgia law, Kirby grading does not meet the statutory definition of a motor carrier. The statute in place back in 2004 and 2005, when this policy was issued that applies is 46 OCGA 46-1-1. It confirms that motor contract carriers or motor common carriers, both must be for hire. The key thing is that statute then defines for hires, meaning that the entity must engage in an activity wherein for compensation, it furnishes a motor vehicle and driver to a person to haul materials on the roadway. Kirby grading was not that type of entity. It was a grading company, not a hauling company, not a trucking company. Can you address, I feel like part of the issue here is what is a grading company? It seems like Mr. Jackson sort of arguing that inherent process of grading is hauling all things and sort of being a motor carrier. A grading company would simply be the entity that is doing the grading of the land. It's other entities such as Greeson and Landrus that are the entities that have dump trucks and that are hauling things away to the extent. Dirt does need to be hauled away. I would imagine there's certainly grading activities where no dirt has to be removed from a property because you're merely moving the dirt around, which really goes to the fact that a grading company is not by definition a motor carrier. Instead, it's these types of entities that are hauling things on roadways for compensation. That under the Georgia statute is what a motor carrier is. Kirby grading was not that type of entity. And it is- Mr. Sprinkle, if I could interrupt you for one second, please. Mr. Jackson says in part in his brief and here in argument that Zurich's own underwriting policies indicated that a company like Kirby was supposed to be designated as or considered as a motor carrier. What do you say about that? The underwriting document he's referring to, there are a couple of issues with it. Number one, it did not become in effect until October 1st of 2005, which was after the policy in question was issued after the accident in question. Second, the testimony in the case is that underwriting document only applied to an entity that is part of its application for a policy with the Zurich Small Business Unit indicated that it had to make motor carrier filings. As a result of that indication by an insurer during the application process, then those underwriting guidelines would have applied. And indeed the underwriting guidelines don't say that they must be a motor carrier. It just says that in certain circumstances, there may be filings that are required. But again, those documents that underwriting guidelines does not apply because it was not in effect at the time the policy was issued. And second- How long after the policy was issued in this case, did that underwriting document come into existence? The policy in this case would have been issued February, excuse me, 2005. And that underwriting guideline is from October 2005. But the key thing is that guideline would not have applied unless an entity indicated that it had to make motor carrier filings, which Kirby grading did not do when it applied to policy. Turning briefly to the SAP versus Canal Insurance case, that is of course the major case in which the Bentons relied. That case, as the district court noted, was heavily fact-dependent, involved facts that are completely different from the facts here. In that case, you had a trucking company that was indisputably a motor carrier. Indeed, it had applied with the insurance company. In that case, it identified itself as a common carrier. The insurance company knew it was a carrier. Yet for some reason, the insurance company had not issued a motor carrier policy to an entity it knew to be a motor carrier. Based upon those facts, the Georgia Supreme Court held that it would be proper under equitable principles to rewrite the insurance policy and make it into a motor carrier policy. The key facts here are that Kirby grading is not a motor carrier under Georgia law. It did not identify itself as a motor carrier to Zurich when it applied for the policy. There's no indication of any need for any motor carrier filings. It's indicated by the fact that Kirby denied that it had to make any such filings. And indeed, the other issue in the SAP case was that the motoring public was going to be left without any recovery as a result of an accident involving a motor carrier. In this case, the Bentons have recovered over $2.4 million in connection with this accident. And even more importantly is the fact that I think it's somewhat lost is that it was not Kirby grading's truck that was involved in the accident. It was not Kirby grading's driver that was involved in the accident. Instead, it was a truck owned by Stephen Landers and driven by Stephen Landers. And he, of course, settled out with the Bentons prior to the underlying trial since that they have already recovered from him via a limited liability release. That's the key situation that distinguishes this case from the SAP case. And as the district court also correctly noted, not only in this case would you have to equitably rewrite the policy into a motor carrier policy, but you would also then have to take the second step of undoing its cancellation in order for it to be in effect at the time of the accident. There is no Georgia case in which a court has ever taken both of these steps and combined them into one. And there is no equitable basis to do so in this case based upon the facts. Therefore, the district court correctly affirmed summary or you should correctly, the district court correctly granted summary judgment. Let me ask you a question. Let me ask you a question about that last part that you mentioned, which is the cancellation of the contract. When did that cancellation happen? In line with the accident? The cancellation of the policy was on August 15, 2005. The accident was then on September 1st of 2005. So the policy had been canceled a little over two weeks prior to the accident in question. And that is the gap in coverage that is the genesis of the separate malpractice action that Kirby Graydon has filed against his insurance agent, him having that gap in coverage that existed between those two policies. And was that canceled for failure to pay the premiums or was it canceled? That is correct, your honor. Kirby has admitted that he was unhappy with the amount of premium being charged for the policy. As a result of that, he decided to stop paying the premium. Notice was provided to him by Zurich that if he was not going to pay the premium, the policy would be canceled. He did not pay the premium. And as a result, the policy was then canceled as a result of him not paying for the policy. On your argument, I understand the argument about Zurich not having any knowledge or reason to know that Kirby was a motor carrier when it applied for insurance. But you said canceling the cancellation for lack of a better term would be a second problematic step. But I thought if you reformed the policy to be a motor carrier policy, Georgia's statutory law gave a longer period of time for cancellation to become effective. Is that not correct? That is correct. The key difference would be that in SAP, that policy had not been canceled. So the court was not reforming the policy and undoing its cancellation. Instead, it was just reforming the policy because that policy had a 50 mile exclusion in it that otherwise would have applied. Here, as the district court did note, it would be a second step of not only reforming the policy, but then also applying that separate rule of continuous coverage based upon the equitable principles in this case that Kirby never indicated to Zurich that it was any type of motor carrier. There was no indication it was. It just would be inconsistent with principles of equity to both reform and undo the cancellation of the policy on that basis. The final issue of the Benton's, although they've not really addressed this in their appeal, but they did argue with the court below that coverage could be created by waiver or estoppel. I'll just briefly address that issue then. Georgia, the rule is that coverage cannot be created by waiver or estoppel. The one exception to that rule is when an insurance company undertakes an insurance defense without a reservation of rights, such that the insured is led to believe that there are no coverage issues and it relies to its detriment on that. The facts in this case are that there was never a defense undertaken of Kirby grading by Zurich. Instead, as was the case from as soon as Zurich was informed about the underlying lawsuit, it told Kirby that the policy had been canceled. It would not apply. No defense was ever entered for it. Therefore, the waiver and estoppel argument is not something that could apply here because there never was a defense undertaken for Kirby by Zurich. Instead, Kirby throughout the case was defended by its own attorney, a man named Gary Cooper, who represented it at trial. The trial transcript confirms that he was the only attorney for Kirby grading at the trial of the case and in the underlying action. And no other attorneys, be it attorneys for Zurich or anyone else, were ever representing Kirby grading. Therefore, there is no basis to create any coverage by waiver or estoppel in this case as well. If there are no other questions, then I would yield my time and simply state that the district court's order, it's very thorough, it's very well-reasoned. It should be affirmed in its entirety. All right, thank you very much, Mr. Sprinkled. We appreciate it. Thank you. Mr. Jackson, you've got your five minutes remaining. Yes, sir. Just quickly, Mr. Sprinkled said that in the SAP case that they were a motor carrier. That's not the facts in that case. In SAP, they had no motor carrier for higher authority, none. And the insurer in that case issued what's in, it's a term of art, a garage policy, where they put some mile radius limitation on the coverage under that policy. What the court did was what they should do. What is the insurer doing? In that case, it was a dump truck on the road that caused a fatality. The second step they looked at was, that's the conduct. How does that template against the statutes, the regulations? And if you're a strict constructionist, someone who looks at the statutes and you look at the statutory definition of for hire and what they're doing, they said they're a motor carrier. Then the court said this. The insurer, eyes open, looked at an application, had the VIN numbers for these vehicles, had the weights. Did they know that they were insuring a motor carrier operation? And what the Georgia Supreme Court said was yes to both of those questions. They said, as a consequence, you have a scoff law that doesn't get its motor carrier authority, which is required under 46-7-3, which is the 2005 statute. Then under 46-7-12a, they must have a motor carrier policy. And this is the very important part that the court below and that Zurich is trying to skip over. It is the insurer's obligation to make the filings with the Public Service Commission, the Motor Carrier Compliance Division. It is never, ever the insurer's. In this case- But that's only if the insurance company knows that it is insuring a motor carrier, right? Correct, sir. Look at the application in this case. A dump truck, a vocational vehicle, was listed on there, plainly a commercial motor vehicle. It used a lowboy trailer to haul a bulldozer and a backhoe to these sites. When it got there, that dump truck also got on the road and made dumps during the course of the work there. But when they had heavy hauling days, Kirby did what he was hired to do, to remove the dirt from the site. He then engaged other motor carriers to assist him in his for-hire activities. And it's that plain. If Zurich starts with the policy- Mr. Jackson, I think Judge Brasher is trying to ask you a question. Yes, sir. I'm sorry, this is the Zoom process. How much of your argument is that a grading company is sort of inherently a motor carrier? Are you effectively arguing that just every grading company is a motor carrier under Georgia law? No, but you look at this, this is, you know, summary judgment, facts specific to this. What was this particular motor carrier doing? What did Zurich know when it looked at that application and saw that other than two pickup trucks, they had two dump trucks, a bulldozer, a front-end loader, a trailer to get it to its site, and they were actually using that dump truck on the roads. That, by definition of law, makes them a motor carrier for hire, Your Honor. You look at the statute, 46-7-1689, you look at the regulations, the definition of commercial motor vehicles in this case, we're on all fours. Then it becomes the, then the insurer has to say, okay, this is what you're doing. These are the type of vehicles you're doing it with. They're commercial motor vehicles. You're hiring yourself out, and then in the scratch pad notes, which they have at Appendix 10, Exhibit 3A, they did a, this was the second year of this policy, and they issued a policy and said, we know that this particular insurer does sub-and-out work to assist him in his hauling operations, and they didn't cancel the policy. And in this case, we talked about those underwriting notes. Zurich produced those in this case. We took depositions. They represented that these were the controlling documents. It was Judge May who pointed out that there were six months after this policy was issued for a second time that they did it. But the Form K, Judge, you had to ask, does this policy continue in effect? Under motor carrier rules, both federal and state, under the federal rules, under 49 CFR 387, if you cancel a motor carrier policy, it remains in effect for 30 days. Under state law, and it's fungible between states, if you do not issue a Form K to cancel a policy for a motor carrier for hire interstate, that policy remains in effect until the next policy picked up. And you discerned correctly, Your Honor, August 15th, fatal crash, September 1st, new policy picks up October 6th. We exhausted, and that's beside the point that we tried to get the other carrier to make sure that they were responsible. What Zurich did in this case was sit on its hands. And it came to trial, and I know he mentioned Mr. Cooper, but Mr. Sprinkle and Mr. Goldman personally attended every day of that trial, and were assisting in voir dire, asking for notes. All that set out in the brief. But they were, yes, sir. You've gone over your rebuttal time for over a minute. So if you'd like to wrap up, you can go ahead and do so. Yes, sir. The public policy, if it's a duck, looks like a duck, walks like a duck, it's a duck. That's what we have here. And Zurich, as someone who is a behemoth in the insurance business, looked at the policy application, all commercial vehicles. They would then have to template against the law. And out of an abundance of caution, even if they didn't, all they had to do is issue a Form K, they did not. And we have a tragic circumstance that occurs 16 days into a 30-day-plus gap between these two policies, and the Bentons are left in the wake. And what the Supreme Court of Georgia says is that the insurers and the motor carriers will take on that risk. And if they don't properly issue a Form K or issue the proper policy, it falls on them, not innocent members of the motoring public like Chase Benton, a 16-year-old boy who was incinerated beyond recognition in this vehicle due to no fault of his own, a real tragedy. All right, Mr. Jackson, thank you very much. Thank you both. Yes, sir.